CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY *v.* COTTRELL, ADMR.

[No. 14,262. Filed October 29, 1931. Rehearing denied December 14, 1931. Transfer denied June 20, 1933.]

*Aikman & Sawyer, K. L. Richmond* and *Beasley, Aik-man, O'Brien & Beasley* for appellant.

*Hunter J. Von Leer,* for appellee.

KIME, J.—This was a suit by administrator *de bonis non,* in a second amended complaint in one paragraph, answered by a general denial, wherein the administrator recovered a $1,500.00 judgment after a verdict by

jury which also answered twenty-three interrogatories. Following the general verdict appellant moved for a judgment on the interrogatories which was overruled, and which action is assigned as error here.

In considering the question as to whether the court erred in overruling appellant's motion for judgment on the answers to interrogatories we can look only to the complaint, the answer, the general verdict and proper and relevant interrogatories and their answers eliciting material and substantive facts, reasonably construed as a whole.

The complaint as applicable is as follows:

". . . That on the 26th day of November, 1925, one William H. Otte was driving and operating an automobile on and over the public highway known as Fort Harrison Road which runs from a point east of 25th street to a point west of Lafayette Avenue, in said county and which crosses the tracks of said defendant at a place about eighty yards west of the intersection of said Fort Harrison Road with said 25th street in said county.

"That said William H. Otte approached said crossing from the east driving said automobile at a rate of speed of about ten miles per hour, and when said decedent reached said intersection he looked toward the north; that said decedent while driving from said intersection to said crossing looked and listened for approaching trains on the tracks of said defendant; that said decedent when about fifteen feet from said crossing again looked and listened as aforesaid.

"That at said time and place defendant's tracks extended in a northeasterly direction from said crossing.

"That at said time commencing at a point about four feet north of and about eight feet west of said crossing

running then northeast from said point along a line parallel to said tracks for about twenty-four hundred feet and also running thence east from said point along a line parallel to said Fort Harrison Road for about three hundred and fifty feet, there was located in the triangular area bounded on two sides by the aforesaid lines and starting at the point aforesaid the following: one orchard, one line of telegraph poles, one line of telephone poles, several dwellings, chicken houses and outbuildings, a number of shade trees, one field of weeds, one embankment; that because of the same thus set out, located and described it was difficult for the said William H. Otte to see or hear any engine or train approaching said crossing from the northeast.

"That just as said William H. Otte was crossing over the tracks of said defendant on said highway and while he was on said tracks and crossing, the defendant negligently and carelessly ran a locomotive and a train up to and over said crossing from the northeast, at a high rate of speed of about fifty miles per hour without sounding the whistle or ringing the bell on said locomotive and negligently failed to give any signal or warning of the approach of said engine and train to said crossing and thereby negligently ran said locomotive and engine against the automobile of said William H. Otte with great force and violence as he was crossing the defendant's tracks on said highway.

"That said defendant while approaching said crossing as aforesaid, and when said engine was not less than eighty (80) nor more than one hundred (100) rods from said crossing, did not sound the whistle on said engine distinctly three times and did not ring the bell attached to said engine continuously from the time of sounding such whistle until said engine has passed said crossing.

"That by reason of the aforesaid negligence of the de-

fendant the said William H. Otte was then and there and thereby killed."

The interrogatories and answers are as follows:

"No. 1. Did the whistle blow when the engine was east of the home of Mrs. Dierdorf?
Answer. No.

No. 2. Did the engineer sound the whistle three times when the engine was at a point not less than 1,320 feet and not more than 1,650 feet from the Fort Harrison crossing?
Answer. Yes.

No. 3. Did the bell on the engine ring continuosuly from the time the train left Jackson Yards until it crossed the Fort Harrison Road crossing?
Answer. No.

No. 4. Was the train visible to the decedent had he looked as he approached the crossing?
Answer. Yes.

No. 5. Did Fort Harrison Road run east and west over the crossing?
Answer. Yes.

No. 6. Was the distance along Fort Harrison Road from the east right of way fence to the railroad track 26 feet?
Answer. Yes.

No. 7. On reaching a point on the Fort Harrison Road 25 feet east from the track could a traveler by looking see a train up the track as far as Dewey Tower?
Answer. Yes.

No. 8. Was the distance along the center line of the Chicago and Eastern Illinois Railway track from the Fort Harrison Road up to the Dewey Tower approximately 800 feet?
Answer. Yes.

No. 9. Was the distance along the center line of the Chicago and Eastern Illinois Railroad track from the Fort Harrison crossing up to 25th Street crossing approximately 500 feet?
Answer. Yes.

No. 10. Was the train approximately 800 feet long?
Answer. Yes.

No. 11. Was the distance from the intersection of Fort Harrison Road and 25th Street over to the railroad crossing on Fort Harrison Road approximately 240 feet?

Answer. Yes.

No. 12. Was the distance from the intersection of Fort Harrison Road and 25th Street up to the railroad crossing over 25th Street approximately 410 feet?

Answer. Yes.

No. 13. Was the dining car of the train taken from the train at Evansville for repairs to the air and steam line?

Answer. Yes.

No. 14. Was the air line on the dining car broken as a result of the automobile coming in contact with the dining car?

Answer. No.

No. 15. Did the decedent look for an approaching train as he approached the crossing?

Answer. Yes.

No. 16. Could the decedent have seen the approaching train in time to have stopped his car had he looked with reasonable care?

Answer. Yes.

No. 17. Was the noise or rumble of the train heard by other persons in the vicinity as the decedent approached the railroad crossing?

Answer. Yes.

No. 18. Could the decedent have heard the noise and rumble of the approaching train had he actually listened with reasonable care when he was at a point 50 feet from the crossing?

Answer. Yes.

No. 19. Did the decedent slow down his automobile as he approached the railroad crossing?

Answer. Yes.

No. 20. At what rate of speed was the automobile of decedent traveling at the time of the collision?

Answer. 25 miles.

No. 21. At what rate of speed was the train traveling at the time of the collision?

Answer. 45 miles.

No. 22. Were the steel rails of defendant's railroad track visible to a traveler as he approached the Fort Harrison crossing from the east?

Answer. Yes.

No. 23. Did the decedent make any effort to avoid the accident?

Answer. Yes."

Appellee complains particularly of 16 and 18 saying that they are improper because they call for conclusions of law. They each call for but one ultimate fact ██ and not conclusions of law.. *Waking* v. *Cincinnati, I. & W. R. Co.* (1920), 72 Ind. App. 401, 125 N. E. 799.

The important question here is the one of contributory negligence. That the decedent was guilty of contributory negligence as a matter of law is definitely established by the answers of the jury to interrogatories 16 and 18. This has been clearly and definitely established by *Waking* v. *Cincinnati, supra; New York, C. & St. L. R. Co.* v. *Leopold, Adm'r.* (1920), 73 Ind. App. 309, 127 N. E. 298, and the answers to said interrogatories are in irreconcilable conflict with the general verdict.

Our Supreme Court, in *Cleveland, etc.* v. *Baker* (1920), 190 Ind. 633, 128 N. E. 836, 839, by Lairy, J., said: "It can not be stated as a general proposition of law that ordinary care requires a traveler on a highway to stop before entering on the track of a steam railway company, and neither can it be generally stated as a matter of law that ordinary care does not require that precaution. Whether such precaution is or is not required in the exercise of due care depends on the conditions and circumstances disclosed in the particular case. In the vast majority of cases the question is one of fact, and the cases must be rare which require the court to decide it as a question of law, but there can be no doubt that such cases

have arisen, and that they will continue to arise." This case goes on to hold that appellee was guilty of contributory negligence.

This, when applied here, means that the judgment must be for the appellant. Here the jury returned a verdict for $1,500.00 and answered interrogatories. They are in irreconcilable conflict. It is then a pure question of law. The Vermillion Circuit Court is hereby directed to enter judgment for the appellant. And it is so ordered.